UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BUFFALO TUNGSTEN, INC., | **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

                     Plaintiff, | 11-CV-00875(M)

      -v-

CMW INTERNATIONAL, INC.,
D/B/A CMW, INC.

                     Defendant.
_____

**BACKGROUND**

On October 18, 2011, plaintiff Buffalo Tungsten, Inc. ("BTI"), located in Buffalo, New York, commenced this action against defendant CMW International, Inc. ("CMW"), located in Indianapolis, Indiana, seeking damages from CMW of "no less than $475,120.25" for unpaid invoices for tungsten powder delivered to CMW on consignment. Complaint [1].[1] CMW answered and counterclaimed for damages "in excess of $800,000.00" [11], alleging that BTI had breached an agreement to supply CMW with all of its requirements for tungsten powder. The parties consented to proceed before me [23], and a bench trial was held on February 11-14, 2013, followed by the parties' post-trial submissions [51-55].

Pursuant to Fed. R. Civ. P. ("Rule") 52, I am now required to make Findings of Fact and Conclusions of Law. In doing so, I will address only those matters pertinent to my decision. *See* Rule 52 <u>Advisory Committee Notes</u> (1946 Amendment) ("the judge need only make brief, definite, pertinent findings . . . there is no necessity for over-elaboration of detail or

---

[1]     Bracketed references are to CM-ECF docket entries.

particularization of facts"); Immigration and Naturalization Service v. Bagamasbad, 429 U.S. 24, 25 (1976) ("courts . . . are not required to make findings on issues the decision of which is unnecessary to the results they reach").

**FINDINGS OF FACT and CONCLUSIONS OF LAW**

"The distinction between law and fact is anything but clear-cut." 9 Moore's Federal Practice, §52.15[1] (Matthew Bender 3d ed.); Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982) (noting "the vexing nature of the distinction between questions of fact and questions of law"). Therefore, for purposes of appellate review, "the labels of fact and law assigned by the trial court are not controlling". City of Chicago v. M/V Morgan, 248 F. Supp.2d 759, 762 (N.D.Ill. 2003), aff'd, 375 F.3d 563 (7th Cir. 2004).

Each of the following Findings of Fact ("FF") and Conclusions of Law ("CL) is accompanied by an explanation which includes subsidiary findings. *See* Henry v. Champlain Enterprises, Inc., 445 F.3d 610, 622 (2d Cir. 2006) ("Courts are not required to provide lengthy analyses in support of their . . . findings but they are required under [Rule] 52(a) to adequately explain the subsidiary facts and methodology underlying the ultimate finding").

**FF 1: Subject to the Determination of its Counterclaim, CMW Owes BTI $345,500 for Shipments of Consigned Tungsten Powder.**

The parties placed that stipulation on the record early on the afternoon of February 13, 2013. While that stipulation is not reflected in the February 13 trial transcript [48], it is confirmed by the digital recording of that day's proceedings, and the parties acknowledge that

they did not transcribe all of the trial proceedings.[2] Although BTI now requests pre-judgment interest on that amount (BTI's Post-Trial Brief [51], pp. 2, 29), the digital recording reflects the parties' agreement that no pre-judgment interest would be awarded.

**CL 1: CMW Bears the Burden of Proof on its Counterclaim.**

United States v. Livecchi, 605 F.Supp.2d 437, 454 (W.D.N.Y. 2009), aff'd, 711 F.3d 345 (2d Cir. 2013).

**FF 2: CMW Has Failed to Prove its Counterclaim.**

CMW must prove its counterclaim by a preponderance of the evidence, which "means the greater part of the believable and reliable evidence, not in terms of the number of witnesses or the length of time taken to present the evidence but in terms of the quality and the weight and convincing effect it has". Parra v. Ercole, 2010 WL 2612679, *3 (S.D.N.Y. 2010).

"The obligations of the court as the trier of fact are to determine which of the witnesses it finds credible, which of the permissible competing inferences it will draw, and whether the party having the burden of proof has persuaded it as factfinder that the requisite facts are proven." Cifra v. G.E. Co., 252 F.3d 205, 215 (2d Cir. 2001). For the following reasons, I find that CMW has failed to satisfy its burden of proof, both as to liability and as to damages.

---

[2] My decision is based on the entire trial, not merely that portion which was transcribed. In the event of an appeal, the parties should have the remainder of the trial transcribed for inclusion in the record.

A.      **Liability**

CMW's Chief Operating Officer, Eric Krepps, testified that CMW was "signing multi-year deals with our customers and . . . we had to guarantee our customers that we had a supply relationship for the lengths of those contracts" ([49], p. 143). For example, although its contracts with Raytheon were "multi-page documents" which specified a duration in writing (id.), he admitted that *no* specific duration was agreed to with BTI: "Our discussion was perpetual until, you know, circumstances might change" (id., p. 148); "[a]s long in the future . . . as we could go", subject to termination "with due notice" (id., pp. 211-12). He further admitted that none of the written documents exchanged with BTI stated that CMW would purchase all of its tungsten powder requirements exclusively from BTI (id., p. 159).

Agreeing that he is "an astute businessman", Mr. Krepps acknowledged that having a source of supply of tungsten powders was critical to fulfilling CMW's *written* agreements with its own customers (id., p. 209). Under these circumstances, I believe that if CMW truly believed that it had reached a binding requirements contract with BTI, that contract "as a practical business matter, would have been reduced to writing". GSGSB, Inc. v. New York Yankees, 862 F.Supp. 1160, 1175 (S.D.N.Y. 1994). "There is a strong presumption against finding binding obligation in agreements which include open terms." Id. at 1174.

CMW argues that "while exclusivity is an essential element of a requirements contract, express contract provisions are not the only source of exclusivity. Exclusivity can also be established through implication, course of dealing, or extrinsic evidence". CMW's Findings of Fact, Conclusions of Law, and Judgment [52-1], p. 9, ¶5. However, "course of dealing" cuts

both ways, and in this case, the parties' course of dealing belies CMW's claim that BTI breached an enforceable requirements contract.

For example, CMW argues that "[b]y putting CMW on allocation for Powder on October 30, 2010, BTI breached the parties' agreement". CMW's Findings of Fact, Conclusions of Law, and Judgment [52-1], p. 12, ¶15. However, when he initially testified about his discussions with BTI's president (Ralph Showalter) upon learning that day of BTI's allocation decision, Mr. Krepps testified: "I was very upset . . . . I initially asked Ralph a series of questions. Why? You know, why are you doing this? Why didn't you let us know before? You know, this is totally unreasonable." ([48], p. 62). "I called him the following Monday . . . to further clarify where he's at. It was a pretty short conversation, but I just wanted to make sure I understood . . . what was going on" (id., p. 67). "I'm pretty sure my conversation was frank and candid about the damage it was going to cause . . . and that I didn't appreciate it coming out of the blue and surprising us like this" (id., p. 68). Significantly *absent* from that testimony is any indication that he told Mr. Showalter that he considered BTI to have breached the contract with CMW.

Mr. Krepps did not speak to Mr. Showalter again until the end of November ([48], pp. 67-68). On November 29, 2010 he e-mailed Mr. Showalter an agenda (Joint Exhibit 66) of topics to be discussed at a meeting with BTI in Buffalo on November 30, 2010. Only *after* admitting that the agenda says nothing about BTI having breached an agreement ([49], p. 200) did Mr. Krepps contend that he had mentioned a breach to Mr. Showalter during their initial telephone conversation at the end of October (id., p. 200-01). However, Mr. Showalter testified that at no point prior to August 2011 did CMW claim that BTI had breached any agreement

-5-

([46], pp. 94-95), and his son Tyler Showalter, who handled the negotiations with CMW over several months from late 2010 until mid-2011 concerning BTI's claim for unpaid powder, testified without contradiction that CMW never mentioned a breach or claim for its own damages during that period.[3]

If CMW truly believed that BTI had breached the contract by failing to supply its requirements of tungsten powder, one would have expected the agenda which Mr. Krepps prepared for the November 30 meeting to have mentioned a breach. One would further have expected CMW to mention the breach and its own claim for damages during the several months in 2011 when BTI was claiming that CMW had underpaid for tungsten powder. Its failure to do so leads me to conclude that CMW has failed to prove that there was a breach. "There is no surer way to find out what parties meant, than to see what they have done. Parties in such cases often claim more, but rarely less, than they are entitled to." New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 112 (2d Cir. 2006). "[A] failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact." United States v. Feldman, 136 F.2d 394, 399 (2d Cir.1943), aff'd, 322 U.S. 487 (1944). *See also* Malone v. United States, 299 F.2d 254, 256 (6th Cir.), cert. denied, 371 U.S. 863 (1962) ("Having failed to assert these claims earlier although he had an opportunity to do so raises a strong inference as to their invalidity").

An adverse credibility determination may be based upon "inherently improbable testimony". Diallo v. I.N.S., 232 F.3d 279, 287-88 (2d Cir. 2000). For the reasons discussed, I

---

[3] Tyler Showalter's February 12, 2013 trial testimony was digitally recorded but not transcribed.

conclude that CMW has failed to prove its claim of breach by "the greater part of the believable and reliable evidence". Parra, 2010 WL 2612679, *3.

B. **Damages**

Even if CMW had proven that BTI breached the contract, I would nevertheless conclude that it has failed to prove its claim for damages. Mr. Krepps admitted that the largest component of CMW's damage claim is that it had to pay higher prices for tungsten powder to suppliers other than BTI ([49], p. 260). However, he further admitted that CMW was able to pass some of those higher costs on to its customers (id.). When asked whether he could calculate how much of those higher costs were passed on to customers, he replied "I could probably calculate that. I could go back and see the shipments to those customers" (id., p. 261).

While admitting that it "may have been able to mitigate some of its damages by passing on this increased material cost to certain of its customers", CMW argues that "failure to mitigate damages is an affirmative defense . . . . Because BTI did not assert [this] affirmative defense . . . it has been waived." CMW's Letter Brief [54], p. 5, n. 4. However, CMW did not *fail* to mitigate its damages - it *did* mitigate them, by passing some of its increased costs on to its customers. "To mitigate means to avoid or reduce damages." Preston v. BNSF Railway Co., 2009 WL 2731154, *6 (D.Or. 2009).

Therefore, to the extent that it passed on increased costs to its customers, CMW has not been damaged. "It is elemental that damages cannot be recovered in excess of the actual damage sustained." France & Canada S.S. Corporation v. Berwind-White Coal Mining Co., 229 N.Y. 89, 95 (1920). "A party injured by a breach of contract is limited in its recovery to the loss

actually suffered." Indiana Bureau of Motor Vehicles v. Ash, Inc., 895 N.E.2d 359, 368 (Ind. Ct. App. 2008).[4] Awarding CMW the damages which it seeks would place it in a better position than had the alleged breach not occurred, because it admits that it has already passed at least some of the increased costs to at least some of its customers. However, it is "fundamental that the injured party should not recover more from the breach than he would have gained had the contract been fully performed." Freund v. Washington Square Press, Inc., 34 N.Y.2d 379, 382 (1974); Indiana Bureau of Motor Vehicles, 895 N.E.2d at 368 ("A party injured by a breach of contract . . . may not be placed in a better position than the party would have enjoyed had the breach not occurred").

Since CMW has not shown which of its increased costs were passed on to its customers, any damages award would be speculative, and therefore improper. *See* Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 403 (1993) (damages must be "capable of measurement based upon known reliable factors without undue speculation"); Noble Roman's, Inc. v. Ward, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002) ("a factfinder may not award damages on the mere basis of conjecture or speculation"); Restatement 2d, Contracts §352 ("Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty"); 24 Williston on Contracts §64:8 (4th ed.) ("prov[ing] damages with reasonable certainty . . . requires at least a rough calculation of damages that is not too speculative, vague, or contingent on unknown factors").

---

[4] Although the parties have not addressed whether the law of New York or Indiana should apply in this case, there does not appear to be any material difference between the law of those two states.

## CONCLUSION

Since I conclude that CMW has failed to prove its counterclaim, BTI is entitled to judgment on its direct claim, in the amount to which the parties have stipulated. The clerk of the court is hereby directed to enter final judgment in favor of BTI against CMW in the amount of $345,500.00, together with taxable costs (but not attorney's fees) pursuant to Rule 54(d), and to close the case.

DATED:	September 30, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge